UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No.:_____

EPLUNO LLC,

    Plaintiff,

v.

DATTA HOLDINGS LLC,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Epluno LLC ("Epluno") hereby sues Defendant, Datta Holdings LLC ("Datta"), and alleges:

## PARTIES, JURISDICTION, AND VENUE

1. This is an action for damages exceeding $75,000, plus attorneys' fees, interest, and costs.

1. Epluno is an Ohio limited liability company registered to do business in the State of Florida.

2. Epluno's members include St. Buckeye, LLC, and Morning Holdings, Ltd.

3. St. Buckeye, LLC, is an Ohio limited liability company. Paul Scapatici is an individual and the sole member of St. Buckeye, LLC, and he resides in the State of Ohio.

4. Morning Holdings, Ltd., is a Barbados corporation with its principal place of business in Barbados.

5. Datta is a Florida limited liability company and its members include Saransh Sharma, Mark Narvaez, Paul Rivera and Varun Datta.

6. Saransh Sharma is an individual who resides in the State of Florida.

7. Mark Narvaez is an individual who resides in the State of Florida.

8. Paul Rivera is an individual who resides in the State of Florida.

9. Varun Datta is an individual who resides in the State of Florida.

10. The Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because Epluno and Datta are citizens of different states, and the amount in controversy, exclusive of interest, costs, and attorneys' fees, exceeds $75,000.00.

11. Epluno and Datta agreed in Section 16.2(d) of the Contract (as defined herein below) to a forum selection clause designating the State of Florida as the proper forum for any disputes.

12. Venue is proper in the Southern District of Florida because Datta's principal place of business is in Broward County, Florida, and is subject to the Court's personal jurisdiction.

13. Epluno has met all conditions precedent to institution of this action, or the conditions have been excused or waived.

14. Epluno retained the law firm of Smith, Currie & Hancock, LLP, to prosecute this action and has agreed to pay reasonable attorneys' fees and costs.

## GENERAL ALLEGATIONS

15. In the fall of 2020 and in the midst of the COVID-19 pandemic, Epluno was in need of 3M original equipment manufacturer ("OEM") respirators (facemasks) to provide to its customers for the masks ultimately to be used to protect individuals from the spread of COVID-19. Epluno's customers' specifications strictly required 3M OEM respirators, so the products needed to be authentic.

16. Epluno representatives met Sam Sharma, a representative for Datta, who told Epluno that Datta had a direct agreement with 3M for the supply of OEM respirators. Mr. Sharma also told Epluno that Datta had real, verifiable lot numbers for these 3M OEM respirators proving that they were authentic 3M products.

17. In reliance on these material statements from Mr. Sharma on behalf of Datta, on or about October 26, 2020, Epluno entered into an agreement with Datta for supply of 3M OEM N95 medical respirators (the "Contract"). A true and correct copy of the Contract is attached hereto as Exhibit A.

18. Section 5(a) of the Contract first required Datta to provide Epluno with verifiable lot numbers for the respirators that Datta intended to deliver to Epluno. The Contract then required Epluno to pay Datta the amount of $510,000.00 and, upon receipt of the payment, Datta was required to deliver to Epluno respirators conforming to the Contract's requirements (particularly, that the respirators be authentic 3M OEM products). *See* Exhibit A, Section 5.

19. After signing the Contract, Datta provided several different lot numbers to Epluno for the product that Datta intended to deliver and Datta represented to

Epluno that each of the lot numbers were verifiable as authentic 3M OEM respirators.

20. After Datta provided the lot numbers, Epluno made timely payment of the $510,000.00 purchase price to Datta in reliance on Datta's multiple statements that the lot numbers were verifiable and corresponded to authentic 3M OEM respirators.

21. Once Datta had respirators in its possession, Datta presented respirators to Epluno for visual inspection. Nothing about the physical condition of the respirators indicated to Epluno that the tendered respirators may be fake.

22. At the time of inspection, Datta had yet to confirm for Epluno that Datta validated the allegedly verifiable lot numbers with 3M. Epluno agreed to let the respirators ship to its customers with the caveat that Datta would take the products back if it was discovered that the respirators were not authentic. Epluno would not accept the respirators until the lot numbers were verified.

23. The respirators were ultimately delivered to Epluno's customers and after delivery it was discovered that the respirators were not authentic and in fact attempts at fake 3M products.

24. Upon discovery that the respirators were fakes, Epluno promptly rejected them and had them returned to Datta. Datta never attempted any subsequent deliveries in order to cure the initial failed delivery of the nonconforming, fake respirators.

25. Due to the actual respirators not being authentic 3M products, it is clear that the lot numbers that Datta provided to Epluno were fake. Datta clearly was trying to pass off fake 3M respirators in order to take a significant amount of money from Epluno.

26. Datta claimed to have a direct agreement with 3M for the supply of original equipment manufacturer respirators and warranted same in Section 3(a) of the Contract. If this were true, then Datta would not have had an issue delivering conforming respirators.

27. In light of Datta's inability to deliver conforming respirators, it is clear that its claim to have a direct agreement with 3M was a lie.

28. Since Datta failed in all respects to deliver conforming respirators, and tried to pass off fake respirators as authentic 3M products, Epluno demanded that Datta return the $510,000.00 purchase price.

29. Datta subsequently acquiesced to the respirators' inauthenticity and agreed to refund the purchase price that Epluno paid. Datta's acquiescence shows that it knew the respirators it tried to pass off as authentic 3M product were fakes.

30. By admitting that the respirators it tried to deliver were inauthentic and agreeing to refund Epluno's money, Datta showed that it knows it is not entitled to keep the $510,000.00 purchase funds.

31. Despite its admission that it is not entitled to keep Epluno's $510,000.00, Datta refused to return the money to Epluno despite multiple demands.

## COUNT I-BREACH OF CONTRACT

32. Epluno re-alleges and incorporates the allegations set forth in Paragraphs 1 through 31 as though fully set forth herein.

33. An enforceable agreement exists between Epluno and Datta as evidenced by the Contract.

34. Datta was obligated to deliver to Epluno respirators that conformed with the Contract's requirements, particularly that the respirators be authentic 3M OEM products.

35. Datta materially breached its obligation to deliver the conforming respirators.

36. Epluno has been damaged as a direct and proximate result of Datta's breaches.

WHEREFORE, Epluno requests a judgment against Datta for monetary damages, plus prejudgment interest, and such other and further relief as the Court deems just and proper.

## COUNT II-CIVIL THEFT PURSUANT TO SECTION 772.11, FLA. STAT.

37. Epluno re-alleges and incorporates the allegations set forth in Paragraphs 1 through 31 as though fully set forth herein.

38. This is an action for civil theft of under Section 772.11, Florida Statutes.

39. Datta knowingly obtained Epluno's $510,000.00.

40. Datta refused to return the funds to Epluno despite acknowledging that Datta has no right to retain the funds, thereby depriving Epluno of the right to and benefit of the funds. Epluno has been damaged as a result.

41. Through its scheme of trying to deliver inauthentic respirators after Epluno gave Datta the $510,000.00, Datta acted with felonious intent to deprive Epluno from its right to the funds and to appropriate the funds for Datta's own use.

42. On March 5, 2022, Epluno delivered to Datta a written demand for the treble damage amount pursuant to Section 772.11(1), Florida Statutes. Datta never responded to the demand or paid Epluno for the treble damage amount.

43. Epluno is entitled to recover its attorneys' fees and court costs incurred in bringing this action against Datta pursuant to Section 772.11, Fla. Stat.

WHEREFORE Epluno requests a judgment against Datta for three-fold monetary damages, attorneys' fees and costs pursuant to Section 772.11, Fla. Stat., prejudgment interest, and such other and further relief as the Court deems just and proper.

**COUNT III-VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**

44. Epluno re-alleges and incorporates the allegations set forth in Paragraphs 1 through 31 as though fully set forth herein.

45. The Florida Deceptive and Unfair Trade Practices Act renders unlawful unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of any trade or commerce. Section 501.204, Fla. Stat.

46. At all relevant times, Datta was engaged in trade or commerce as defined in Section 501.203, Fla. Stat.

47. At all relevant times, Epluno was a consumer as defined by Section 501.203, Fla. Stat.

48. As described above, Datta committed unconscionable acts and practices, or unfair and deceptive acts or practices, as proscribed by Section 501.204, Fla. Stat., by: (1) lying to Epluno that Datta had a direct relationship with 3M for supply of 3M OEM respirators; (2) providing Epluno with fake lot numbers for verification of the respirators; (3) attempting to deceive Epluno by delivering fake respirators in an effort to take $510,000.00 from Epluno without delivering the promised goods; and (4) refusing to return Epluno's $510,000.00 even though Datta acknowledged that the respirators were not authentic and agreed to return the funds.

49. As a result of Datta's unfair and deceptive practices, Epluno has suffered and continues to suffer substantial monetary damages.

50. Datta is liable for all attorneys' fees and costs incurred by Epluno pursuant to Sections 501.211(2) and 501.2105, Fla. Stat.

WHEREFORE, Epluno requests a judgment against Datta for monetary damages, attorneys' fees and costs pursuant to Sections 501.211(2) and 501.2105, Fla. Stat., prejudgment interest, and such other and further relief as the Court deems just and proper.

## COUNT IV-FRAUD

51. Epluno re-alleges and incorporates the allegations set forth in Paragraphs 1 through 31 as though fully set forth herein.

52. As more fully set forth above, Datta made false statements to Epluno (1) that Datta had a direct agreement with 3M for supply of authentic 3M OEM respirators, and (2) that the lot numbers for the respirators corresponded to authentic 3M OEM respirators.

53. Datta knew that the statements were false.

54. Datta intended that the false statements induce Epluno to act by entering into the Contract and paying the $510,000.00 purchase price to Datta so that Datta could keep the money and not return it.

55. Epluno relied on Datta's false statements and was injured by acting in reliance on the false statements, entering into the Contract, and giving Datta the $510,000 that Datta is not entitled to keep and refuses to return.

WHEREFORE, Epluno requests a judgment against Datta for monetary damages, costs, prejudgment interest, and such other and further relief as the Court deems just and proper.

DATED on this 11th day of May 2022.

**SMITH, CURRIE & HANCOCK LLP**

*/s/ Miles Jolley*
Miles D. Jolley, Esq.
Florida Bar No. 121094
Primary E-mail: mdjolley@smithcurrie.com
Secondary E-mail: rweiner@smithcurrie.com
101 N.E. Third Avenue, Suite 1910

        Fort Lauderdale, Florida 33301
        Tel:    (954) 761-8700
        Fax:   (954) 524-6927

***Attorneys for Plaintiff***